**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GLORIA BORGSMILLER,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

Defendant-Appellee.

No. 11-5160
(D.C. No. 4:10-CV-00481-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **EBEL**, Circuit Judges.

Gloria Borgsmiller appeals from an order of the district court affirming the

Commissioner's decision denying her application for disability benefits under the

Social Security Act. We exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C.

§ 405(g), and reverse and remand for further proceedings.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

In 1999, Ms. Borgsmiller had back surgery due to a herniated disc. Although the surgery was initially successful in relieving her back pain, she began to experience pain again a few years later. In November 2001, she was terminated from her employment as an office manager and has not engaged in substantial work since that time. She applied for disability benefits in September 2006, alleging disability beginning on November 30, 2001, due to a back injury, arthritis, hypothyroidism, and high blood pressure. She claimed that due to these conditions she could not sit, stand, or walk for any length of time and was bedridden for three to four weeks at a time.

The facts of Ms. Borgsmiller's medical history concerning her back pain are known to the parties and so we only summarize them here.[1] After her back surgery, Ms. Borgsmiller first sought treatment for back pain in 2002, complaining of pain in her back that radiated down her left leg. She was diagnosed with lower back pain with radiculopathy, to be treated with pain medication and a muscle relaxant. The medical evidence submitted does not document further treatment for back pain until 2006.

In March 2006, she presented to Timothy Sanford, D.O., who became her treating physician, and reported that she had "flares of [back] pain" and, when severe,

---

[1] Because Ms. Borgsmiller does not claim error on appeal with respect to her other conditions for her alleged disability, *i.e.*, arthritis, hypothyroidism, and high blood pressure, we focus, as she does, on her back pain.

she hurt for three to eight weeks and was bedbound.  Admin. R. at 166.  He assessed low back pain, a herniated lumbar disc, and lumbar radiculopathy, and prescribed pain medication and a muscle relaxant.  She periodically treated with Dr. Sanford between 2006 and 2008, reporting intermittent flares of back pain that she claimed at times left her bedbound for weeks or months at a time.  Treatment notes from 2006 reflect that Dr. Sanford opined that Ms. Borgsmiller's herniated disc and lumbar radiculopathy interfered with her activities of daily living.  He further opined that she was unable to work due to periods of exacerbation of back pain which left her bedbound.  Ms. Borgsmiller continued treatment with pain medication and muscle relaxants, prescribed by Dr. Sanford, but did not otherwise have other treatment for her back pain.[2]  A consultative examination done in November 2006 confirmed that Ms. Borgsmiller suffered from low back pain, leg pain, had a limited range of motion of her spine, and ambulated with an unstable gait at a slow speed with the use of a cane.  An agency physician reviewed Ms. Borgsmiller's records and concluded she had a residual functional capacity (RFC) to perform light work.  In March 2007, the evidence was again reviewed by the agency and her light RFC was affirmed.

The Commissioner denied Ms. Borgsmiller's application initially and on reconsideration.  After a de novo hearing before an administrative law judge (ALJ), the ALJ issued her decision in August 2008, finding Ms. Borgsmiller not disabled at

---

[2]     Treatment notes reflect Dr. Sanford referred Ms. Borgsmiller to a neurologist and recommended she undergo an MRI to further examine her lumbar radiculopathy, but she declined due to cost issues and the lack of health insurance.

step four of the controlling five-step sequential analysis. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining five-step process for evaluating claims for disability benefits).[3] The ALJ confirmed that Ms. Borgsmiller had not worked during the period from her alleged onset of disability, November 30, 2001, through her date last insured, December 31, 2006. She found that Ms. Borgsmiller had a severe impairment: degenerative disc disease of the lumbar spine. But she held that this impairment did not meet or equal the listing for presumptive disability for disorders of the spine, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

According to the ALJ, this impairment left Ms. Borgsmiller with an RFC to perform sedentary work. Relying on the Dictionary of Occupational Titles (DOT) and associated inquiries to the vocational expert (VE) who testified at the hearing, the ALJ concluded that Ms. Borgsmiller could still perform her past work as a service office manager and thus was not disabled.

Ms. Borgsmiller's request for review was denied by the Appeals Council, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). She then filed an action in the district court and it affirmed the Commissioner's denial of benefits.

---

[3]     Although not pertinent here, the agency recently revised its rules regarding the five-step sequential analysis such that an ALJ may proceed to step five if she determines that there is insufficient evidence about a claimant's past relevant work to make a finding at step four of the analysis. *See* Expedited Vocational Assessment Under the Sequential Evaluation Process, 77 Fed. Reg. 43492-01 (July 25, 2012) (codified at 20 C.F.R. § 404.1520(h)).

Ms. Borgsmiller now appeals.

## II. Discussion

"In reviewing the [Commissioner's] decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). Rather, "[w]e review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted) (internal quotation marks omitted).

Ms. Borgsmiller raises three challenges to the Commissioner's decision: the ALJ (1) should have recontacted Ms. Borgsmiller's treating physician to clarify the record regarding her flares of back pain; (2) erred in her credibility determination; and (3) did not perform a proper step-four analysis. She also asserts claims of error by the magistrate judge. "[W]e independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). Therefore, although we have considered these arguments about the magistrate judge in the

context of evaluating her claims that the ALJ erred, we do not expressly address her claims of error by the magistrate judge.

## A. Recontacting the Treating Physician

Based on the record before her, the ALJ gave "great weight to Dr. Sanford's opinion that [Ms. Borgsmiller was] disabled during her flares" but concluded that her flares of pain "[did] not occur often enough to prevent her from engaging in substantial gainful activity."  Admin. R. at 16.  On appeal, Ms. Borgsmiller challenges the evidentiary support for this conclusion, in light of the weight given to Dr. Sanford's opinion, and argues that the ALJ should have recontacted Dr. Sanford because the frequency or number of flares in the record is unclear.  Relatedly, she also claims the ALJ impermissibly inferred that Ms. Borgsmiller was not disabled between her flares.

Ms. Borgsmiller bears the burden of proving her disability and must do so by furnishing medical and other evidence of the existence of her disability.  *See Branum*, 385 F.3d at 1271.  On the other hand, the ALJ has a basic obligation to "ensur[e] that an adequate record is developed during the disability hearing consistent with the issues raised."  *Id*. (internal quotation marks omitted).  As applicable at the time that Ms. Borgsmiller's claim for disability benefits was adjudicated, an ALJ was required to recontact a treating source when the evidence received from a treating source was deemed inadequate for the ALJ to determine whether a claimant was disabled.  *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001); *see also Robinson v.*

*Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (noting ALJ's duty to seek additional evidence or clarification from treating source when evidence contains conflict or ambiguity, does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques).[4] The ALJ's duty in that regard was not dependent on any further action by the claimant once the evidence was deemed inadequate. *White*, 287 F.3d at 908.

Ms. Borgsmiller does not point to evidence that states or suggests that the ALJ deemed the evidence from Dr. Sanford inadequate or ambiguous, and we find none. But Ms. Borgsmiller suggests the evidence was, in fact, inadequate or ambiguous because "the record is unclear as to the number of [her] flares" and "[t]he frequency of [her] disabling flares is open to question." Aplt. Br. at 16-17. Based on our review, it does not appear, however, that further contact with Dr. Sanford would have provided the ALJ more clarity. Other than one medical visit with Dr. Sanford in March 2006, Dr. Sanford did not otherwise diagnose a flare or examine Ms. Borgsmiller when a flare was occurring. Rather, Dr. Sanford's medical notes reflect only Ms. Borgsmiller's self-reporting of her flares and the duration of those flares.

---

[4]     Effective March 26, 2012, the regulations governing an ALJ's "duty" to recontact a medical source have changed. Under the current regulations, in evaluating insufficient evidence to determine disability, an ALJ "may recontact [a] treating physician, psychologist, or other medical source" but may instead seek further evidence from another source, including the claimant herself. *See* 20 C.F.R. § 404.1520b.

Accordingly, if the number and/or frequency of Ms. Borgsmiller's flares are unclear, Dr. Sanford is of no assistance in clarifying the matter. And Ms. Borgsmiller has not argued that there are existing reports that Dr. Sanford could have provided the ALJ that would have assisted her in ascertaining the basis for his opinions. *See e.g.*, *Branum*, 385 F.3d at 1271-72 (concluding that the ALJ satisfactorily developed the record when the claimant's "counsel did not indicate or suggest to the ALJ that any medical records were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records"). We conclude that the ALJ was not obligated to recontact Dr. Sanford to clarify any alleged ambiguity regarding the number and/or frequency of Ms. Borgsmiller's flares.

Ms. Borgsmiller also challenges the ALJ's conclusion that "Dr. Sanford's opining that claimant was disabled during the flares implies that she was not disabled between the flares." Admin. R. at 16; *see also* Aplt. Br. at 16, 18. To the extent Ms. Borgsmiller contends the ALJ should have recontacted Dr. Sanford instead of inferring that Ms. Borgsmiller was not disabled in between flares, we disagree. Dr. Sanford's opinion that Ms. Borgsmiller is unable to work during her flares of severe pain is not a medical opinion, 20 C.F.R. § 404.1527(e), but an opinion on the ultimate issue of disability, which is a matter reserved to the Commissioner. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). As such, the ALJ was not required to recontact Dr. Sanford on this ground either.

**B. Credibility Determination**

Ms. Borgsmiller next challenges the ALJ's credibility determination, with respect to her complaints of pain. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation marks omitted). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (brackets omitted) (internal quotation marks omitted).

"To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (internal quotation marks omitted). In assessing a claimant's complaints of disabling pain, an ALJ must consider both objective and subjective evidence. *See Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995). Because they are subjective, a claimant's statements regarding her pain "can be evaluated only on the basis of credibility." *Thompson v. Sullivan*, 987 F.2d 1482, 1488-89 (10th Cir. 1993). As such, "[subjective] statements regarding the intensity and persistence of the pain must be consistent with the medical findings and signs." *Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir. 1988).

In evaluating the credibility of a claimant's subjective statements regarding pain, an ALJ should consider an "individual's daily activities;" the "location,

duration, frequency, and intensity of the individual's pain;" the "dosage and effectiveness of medications taken to alleviate pain;" and "[a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (alteration in original); *see also Thompson*, 987 F.2d at 1489 (listing other factors such as frequency of medical contacts).

The ALJ determined Ms. Borgsmiller had a RFC at the sedentary level. In doing so, the ALJ "d[id] not discount all of [Ms. Borgsmiller's] complaints" of pain, but found that her treating physicians "did not place any functional restrictions on her activities that would preclude sedentary work activity with the previously-mentioned restrictions." Admin. R. at 14. After discussing portions of both the objective and subjective evidence, the ALJ concluded that Ms. Borgsmiller's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [her] residual functional capacity assessment." *Id*. at 15-16.

In reaching this credibility finding, the ALJ stated that Ms. Borgsmiller's flares of pain were "episodic . . . [and] occurring with decreasing frequency." *Id*. at 16. As support, she pointed to medical evidence indicating a reported flare in October 2007, one in February 2008, and none between February 2008 and the time of the hearing in July 2008. And she stated that Dr. Sanford's opinion that Ms. Borgsmiller was disabled during a flare implied that she was not disabled

- 10 -

between the flares. She discounted Ms. Borgsmiller's allegations of disabling pain from arthritis and carpal tunnel syndrome by pointing to medical evidence showing a grip strength rated 5/5, and observed that while Ms. Borgsmiller used a cane, none was prescribed by a physician. Finally, she stated that Ms. Borgsmiller remained able to do chores, wash dishes, and prepare meals.

On appeal, Ms. Borgsmiller contends that her "claim for disability does not hinge on limitations with her hands . . . [or] on her use of a cane," but, instead, "revolves around her pain, and the limiting effect of her flares." Aplt. Br. at 21. She argues then that the ALJ's credibility determination rested in large part on the decreasing frequency of Ms. Borgsmiller's flares and her daily activities, neither of which substantially support a finding that Ms. Borgsmiller's complaints are incredible.

As a preliminary matter, because the ALJ credited Dr. Sanford's opinion that Ms. Borgsmiller is unable to work during flares of severe pain, the ALJ consequently must have found credible Ms. Borgsmiller's subjective statements concerning the intensity and limiting effects of the pain she experienced during a flare of severe pain. Accordingly, although the ALJ did not specify so in her decision, we construe her adverse credibility determination to correspond only with Ms. Borgsmiller's subjective statements concerning pain that she experienced during periods of non-flare activity.

Reviewing the ALJ's credibility determination in this manner, we are not convinced that the ALJ's rejection of Ms. Borgsmiller's complaints of pain was supported by substantial evidence. There are ample reports in the record of Ms. Borgsmiller's pain and prescriptions for pain medication. *See Hamlin*, 365 F.3d at 1221-22 (holding that evidence relied on by ALJ was insufficient to undermine pain allegations where medical records were "replete with [claimant's] reports of pain and of prescriptions"). Yet, as Ms. Borgsmiller correctly asserts, the only justifications given by the ALJ to discount Ms. Borgsmiller's complaints were the decreasing frequency of her flares and an alleged ability to perform daily activities.

Implicit in the ALJ's reliance on the alleged decreasing frequency of Ms. Borgsmiller's flares is a determination that the periods of non-flare activity during which Ms. Borgsmiller could work were increasing to the point that the flares had no significant impact on her overall ability to work. But the relevant period within which to assess the disabling impact of Ms. Borgsmiller's flares was before December 31, 2006, when Ms. Borgsmiller was last insured for benefits. That Ms. Borgsmiller's flares in 2007 and 2008 may have been so infrequent as to have no substantial impact on her ability to work does not necessarily support an inference that their frequency before 2007 had a similarly insubstantial impact.

Ms. Borgsmiller testified that in the beginning, she experienced flares two or three times a year, the longest of which lasted three months. She further testified that she had been able to do better in the last few years by staying at home and by not

walking down stairs or getting into or out of a car.  The ALJ did not assess the impact of Ms. Borgsmiller's flares before 2007 or evaluate the credibility of her allegations that she could not work due to her pain during that earlier period.[5]  In this, the ALJ erred.

In further support of her credibility determination, the ALJ relied on Ms. Borgsmiller's ability on "good days" to do chores, wash dishes, and prepare meals.[6]  Ms. Borgsmiller testified that she is able to do household chores "sometimes," Admin. R. at 32, and clarified as follows:

> [t]here are days that I can get up and I can . . . feel better and I can do some things.  There are other times where I'm either sitting in my recliner or I'm in bed and there are other times I do not get out of bed for weeks at a time.

*Id*.  She also testified that she is unable to drive a vehicle, and "sometimes" has difficulty getting dressed, showered, or even retrieving food from the refrigerator. Although the ALJ did not err in considering Ms. Borgsmiller's activities of daily

---

[5]  Even if the decreasing frequency of Ms. Borgsmiller's flares in 2007 and 2008 justified a determination that she was not disabled at the time of the hearing (a matter we need not decide), it did not rule out the possibility that she was disabled for some period before 2007 and thus entitled to a closed period of benefits.

[6]  It appears that the ALJ equated Ms. Borgsmiller's "good days" with non-flare days and "bad days" with flare days.  Such an assessment is problematic, however, because Ms. Borgsmiller testified that she is in pain "most of the time," Admin. R. at 28, and has leg pain "all the time," *id*. at 31.  Conceivably, Ms. Borgsmiller may experience pain even on "good days."  The question is how severe or limiting that pain may be to determine whether Ms. Borgsmiller may engage in substantial gainful activity.  Accordingly, the ALJ's assessment is not necessarily accurate.

living, she "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490. Indeed, the "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Id*. (alteration in original) (internal quotation marks omitted).

Accordingly, although the ALJ tied her credibility finding to some specific evidence in the record, *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), we conclude none of the evidence relied upon, neither the decreasing frequency of flares nor Ms. Borgsmiller's alleged ability to do some daily activities, provides substantial evidence that Ms. Borgsmiller's complaints of pain were incredible.[7] *See Hamlin*, 365 F.3d at 1221-22. Therefore, we reverse and remand, directing the ALJ to properly evaluate the evidence with respect to Ms. Borgsmiller's credibility. We express no opinion, however, as to the weight the Commissioner should give Ms. Borgsmiller's complaints of pain.

---

[7] In further support of her credibility determination, the ALJ also stated that "Dr. Sanford's opining that the claimant was disabled during the flares implies that she was not disabled between the flares," Admin. R. at 16. Even assuming, *arguendo*, that the record supports a determination that Ms. Borgsmiller can work during non-flare periods, as we discuss *infra*, the pertinent issue in determining whether Ms. Borgsmiller is disabled within the meaning of the Act is whether she can work on a regular and continuing basis. Accordingly, there must be substantial evidence that Ms. Borgsmiller can engage in substantial gainful activity on a regular and continuing basis despite her flares of severe pain during which, the ALJ acknowledged, she could not work.

## C. Step Four Determination

Lastly, Ms. Borgsmiller contends that the ALJ erred in her RFC determination at phase one of step four by failing to include any limitations from her flares in the RFC assessment and in the inquiries to the VE at the hearing. She also contends this improper RFC determination "corrupted [the ALJ's] findings at the third phase" regarding Ms. Borgsmiller's ability to perform her past relevant work (PRW). Aplt. Br. at 24. We agree.

> Step four of the sequential analysis . . . is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . . At each of these phases, the ALJ must make specific findings.

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (alterations in original) (citations omitted) (internal quotation marks omitted). Regarding the first phase, an ALJ should "assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (alterations in original) (internal quotation marks omitted). RFC represents "the most [that the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). To determine a claimant's RFC, the ALJ must consider any medical opinions about what the claimant can still do as well as the claimant's own

- 15 -

testimony concerning her limitations, including limitations resulting from pain.[8] *Id*.

§ 404.1545(a)(3).

The ALJ concluded Ms. Borgsmiller had the RFC to lift/carry ten pounds,

stand/walk for two hours during an eight-hour workday, only occasionally stoop, and

frequently climb, balance, kneel, crouch, and crawl.  In reaching this conclusion, she

stated that Ms. Borgsmiller's "treating physicians did not place any functional

restrictions on her activities that would preclude sedentary work activity with the

previously-mentioned restrictions."  Admin. R. at 14.

With respect to Ms. Borgsmiller's flares of severe pain, the ALJ gave "great

weight" to Dr. Sanford's opinion that Ms. Borgsmiller is unable to work during her

flares.  *Id.* at 16.  But the ALJ concluded, based on the medical records showing

episodic reports of flares and decreasing flares, that Ms. Borgsmiller's flares did not

occur often enough to prevent her from engaging in substantial gainful activity.  *See*

20 C.F.R. § 404.1505(a) (noting that to be disabled, claimant must have impairment

that lasts not less than twelve months and causes an inability to engage in any

substantial gainful activity); *see also Washington v. Shalala*, 37 F.3d 1437,

1442 (10th Cir. 1994) (noting that finding that claimant is able to engage in

---

[8]     In light of our determination regarding the ALJ's credibility determination, because the ALJ's credibility and RFC determinations are inherently intertwined, any new determination on credibility will necessarily require reassessment of Ms. Borgsmiller's RFC.  *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).

substantial gainful activity requires determination that claimant can hold whatever job she finds for a significant period of time).

On appeal, Ms. Borgsmiller first claims that the ALJ's RFC assessment is improper because it did not include any limitations from her flares. We agree. Although Dr. Sanford's opinion that Ms. Borgsmiller is "unable to work" during her flares of severe pain, Admin. R. at 158, is an opinion on the ultimate issue of disability, which is a matter reserved to the Commissioner, *Castellano*, 26 F.3d at 1029, the ALJ gave the opinion great weight and thus accepted that Ms. Borgsmiller cannot work during her flares of severe pain.

But the ALJ omitted this limitation in her RFC assessment. As a result, the ALJ's RFC assessment contradicts her own determination that Ms. Borgsmiller is unable to work during flares of severe pain. Further, while the ALJ stated in support of her RFC assessment that Ms. Borgsmiller's treating physicians did not place any functional restrictions on her activities, this is accurate only with respect to those periods when Ms. Borgsmiller is not experiencing flares of severe pain. When she is experiencing flares of severe pain, Dr. Sanford opined that Ms. Borgsmiller is unable to work, which represents a significant functional restriction on her activities. Accordingly, the ALJ's RFC does not accurately reflect Ms. Borgsmiller's pain limitation, and, therefore, the ALJ erred at the first phase of the step four analysis. *See*, *e.g.*, *Winfrey*, 92 F.3d at 1023-24 (noting ALJ's error in failing to include in RFC all the treating physician's limitations that ALJ had credited).

Relatedly, we also find problematic the ALJ's conclusion that "the flares do not occur often enough to prevent [Ms. Borgsmiller] from engaging in substantial gainful activity," Admin. R. at 16. Ms. Borgsmiller testified that her flares last for weeks, even months, at a time. The ALJ relied on evidence that the flares were occurring with decreasing frequency in 2007 and 2008 to conclude that they did not interfere with Ms. Borgsmiller's ability to engage in substantial gainful activity.

But even if the frequency of the flares had declined in 2007 and 2008, that does not mean they were not disabling before 2007, when they occurred with more frequency. Whether Ms. Borgsmiller's flares happened with such frequency, and were of such duration, as to prevent her from engaging in substantial gainful activity between the November 2001 onset date and December 31, 2006, when she was last insured for benefits, is a separate inquiry altogether. And it is one the ALJ did not specifically address. We recognize that the ALJ need not discuss every piece of evidence, *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996), and it is possible that she considered the flares that occurred prior to 2007, in concluding that they did not occur with sufficient frequency as to be disabling. But to the extent the ALJ considered only the frequency of the flares that occurred after December 31, 2006, in reaching that conclusion, such consideration was erroneous.

Ms. Borgsmiller also contends, and we agree, that the ALJ's analysis at phase three of step four was flawed. Phase three requires the ALJ to determine whether the claimant has the ability to meet the job demands of the PRW found in phase two

despite the mental and/or physical limitations found in phase one. *Bowman*, 511 F.3d at 1272. As noted previously, the ALJ failed to include Ms. Borgsmiller's pain limitation in the RFC assessment at phase one. She concluded, however, that Ms. Borgsmiller could perform her PRW as a service office manager. [Admin. R. at 16]. The ALJ's finding regarding Ms. Borgsmiller's ability to perform her PRW is not supported by substantial evidence because it does not accurately reflect the record or her own findings.

In determining whether Ms. Borgsmiller is able to perform her PRW, the ALJ sought information from the VE about Ms. Borgsmiller's PRW. *See Winfrey*, 92 F.3d at 1025 ("[T]he ALJ may rely on information supplied by the VE at step four about the demands of the claimant's [PRW].”). The VE testified that Ms. Borgsmiller's PRW as a service office manager was most akin to a secretarial position, and constituted a sedentary job, and that her PRW as an apartment manager constituted a light job. Based on our review, the ALJ did not, however, adequately inquire about the demands of Ms. Borgsmiller's PRW in order to determine whether she could meet those demands.

Specifically, although the ALJ credited Dr. Sanford's opinion that Ms. Borsmiller is unable to work during flares of severe pain, the record does not demonstrate that the ALJ sought information from the VE regarding whether the demands of Ms. Borgsmiller's PRW permitted absence from work for periods of time of the length and frequency that the ALJ determined corresponded with

Ms. Borgsmiller's flares of severe pain. This error may have resulted, in part, from the ALJ's initial failure to make specific and adequate findings regarding the frequency and duration of Ms. Borgsmiller's flares of severe pain before 2007.[9] Ms. Borgsmiller testified that there are "times [she] does not get out of bed for weeks at a time," Admin. R. at 32; *see also id*. at 156, and she reported having been bedbound "for up to 3 months at a time," *id*. at 162; *see also id*. at 36. Yet, there is no evidence in the record demonstrating the vocational impact of these periods of severe inactivity. Accordingly, the inadequacies of the ALJ's inquiries to the VE rendered her determination that Ms. Borgsmiller could perform her PRW unsupportable.

"In order to engage in [substantial] gainful activity, a person must be capable of performing on a reasonably regular basis." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). But without making necessary findings regarding the demands of Ms. Borgsmiller's PRW in conjunction with Ms. Borgsmiller's pain limitation, the ALJ could not, and did not, make an adequate finding regarding Ms. Borgsmiller's ability to perform her PRW *on a regular and continuing basis*. *See Washington*, 37 F.3d at 1442 (determination that claimant is able to engage in substantial gainful

---

[9]     In order to make the necessary findings on remand, it may be necessary for the ALJ to solicit more information from Ms. Borgsmiller concerning the frequency and duration of her flares between her alleged onset date and December 31, 2006.

activity requires a determination that claimant can hold whatever job she finds for a significant period of time); *Byron*, 742 F.2d at 1235. As such, the ALJ's conclusion that Ms. Borgsmiller may perform her PRW as a service office manager is not adequately supported in the record.

We conclude the ALJ erred in her step four analysis by failing to include Ms. Borgsmiller's pain limitation in the RFC assessment and in failing to make inquiries of the VE necessary to determine the vocational impact of Ms. Borgsmiller's flares of severe pain. We, therefore, reverse and remand on this issue also.

### III.    Conclusion

The judgment of the district court is REVERSED, and this case is REMANDED with instructions to remand to the agency for additional proceedings consistent with the views expressed herein.

Entered for the Court


David M. Ebel
Circuit Judge