FILED
United States Court of Appeals
Tenth Circuit

January 4, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

PEGGY L. BOWMAN,

        Plaintiff-Appellant,

v.

No. 06-6380

MICHAEL J. ASTRUE,[*]
Commissioner, Social Security
Administration,

        Defendant-Appellee.

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. CIV-05-1426-F)**

Submitted on the Briefs:[**]

Darren T. Rackley of Troutman & Troutman, P.C., Tulsa, Oklahoma, for
Plaintiff-Appellant.

John C. Richter, United States Attorney, Oklahoma City, Oklahoma; Tina M.
Waddell, Regional Chief Counsel, and Richard A. Gilbert, Special Assistant U.S.
Attorney, Office of the General Counsel, Region VI, Social Security
Administration, Dallas, Texas, for Defendant-Appellee.

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Michael J. Astrue is substituted for
Linda S. McMahon as appellee in this appeal.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Before **HOLLOWAY**, Circuit Judge, **BARRETT**, Senior Circuit Judge, and **SEYMOUR**, Circuit Judge.

**SEYMOUR**, Circuit Judge.

Peggy L. Bowman appeals from an order of the district court affirming the Social Security Commissioner's denial of her application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act. Ms. Bowman argues that a remand to the Commissioner is necessary because: (1) the Administrative Law Judge (ALJ) erred, as a matter of law, in failing to perform a proper analysis at step four of the five-step sequential evaluation process for determining whether a social security claimant is disabled, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing five steps); (2) the ALJ erred, as a matter of law, in failing to properly evaluate the opinion of Ms. Bowman's primary medical provider, Linda W. Hancik, a registered nurse and family nurse practitioner; and (3) the ALJ's findings that Ms. Bowman was capable of performing both light work and her past relevant work are not supported by substantial evidence.

We agree with Ms. Bowman that a remand is required with regard to the first issue. As part of the remand proceedings, we also direct the Commissioner to reconsider Nurse Hancik's opinion in accordance with the instructions set forth

herein. In light of our disposition of the first two issues, we do not need to address the third issue. Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I.

Ms. Bowman was forty-nine years old when the ALJ denied her application for SSI benefits. She obtained a high school general equivalency degree and attended one year of college. She has prior work experience as a housekeeper, food preparation worker, cashier, fast food worker, and hostess. Ms. Bowman alleges that she has been unable to work since October 6, 1997, "due to limitations imposed by asthma, arthritic lower back pain, limited use of her left wrist and hand status post surgery, tuberculosis, allergic rhinitis, anxiety, and depression." Aplt. Br. at 4.

In June 2003, Dr. James P. Metcalf examined Ms. Bowman and performed a physical consultative examination on behalf of the Commissioner. Dr. Metcalf's "clinical impression" was that Ms. Bowman suffered from chronic lower back pain without radiculopathy, bronchial asthma, and "[status/post] surgical procedure on the left wrist with limited range of motion." Aplt. App., Vol. II at 212. Dr. Metcalf also reported that Ms. Bowman was unable to effectively grasp tools such as a hammer with her left hand. *Id.* at 215.

After Ms. Bowman's application for SSI benefits was denied initially and on reconsideration, a de novo hearing was held before the ALJ in January 2005.

At the hearing, a vocational expert (VE) testified that Ms. Bowman's prior jobs are classified as "light in exertion" in the Department of Labor's *Dictionary of Occupational Titles* (4th ed. 1991). *Id.* at 265-66. The VE also identified the DOT Code for each of Ms. Bowman's prior jobs. *Id.* at 266.

In February 2005, the ALJ issued a written decision denying Ms. Bowman's application for SSI benefits. Although the ALJ found at step two of the sequential evaluation process that Ms. Bowman suffered from severe impairments in the form of "disorders of the back, discogenic and degenerative and asthma," *id.* at 20, the ALJ concluded at step four that she could still perform her past relevant work "as performed in the national economy" and was therefore not disabled. *Id.* at 22. Specifically, the ALJ found that: (1) Ms. Bowman retained "the residual functional capacity to perform light work with limited use of her left hand and occasional stooping," *id.*; and (2) Ms. Bowman's "past relevant work as a cashier, housekeeper, food preparer, fast food worker and hostess, did not require the performance of work-related activities precluded by her residual functional capacity," *id.*

In October 2005, the Appeals Council denied Ms. Bowman's request for review of the ALJ's decision. Ms. Bowman then filed a complaint in the district court. In October 2006, the magistrate judge entered a report and recommendation, recommending that the district court affirm the ALJ's denial of Ms. Bowman's application for SSI benefits. The district court adopted the

magistrate judge's recommendation and affirmed the ALJ's decision.  This appeal

followed.

Because the Appeals Council denied review, the ALJ's decision is the

Commissioner's final decision for purposes of this appeal.  *See Doyal v.*

*Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).  In reviewing the ALJ's decision,

"we neither reweigh the evidence nor substitute our judgment for that of the

agency."  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.

1991).  Instead, we review the ALJ's decision only "to determine whether the

factual findings are supported by substantial evidence in the record and whether

the correct legal standards were applied."  *Doyal*, 331 F.3d at 760.

## II.

### A.  The ALJ's Step-Four Analysis.

"Step four of the sequential analysis . . . is comprised of three phases."

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

> In the first phase, the ALJ must evaluate a claimant's physical and
> mental residual functional capacity (RFC), . . . and in the second
> phase, he must determine the physical and mental demands of the
> claimant's past relevant work. . . .  In the final phase, the ALJ
> determines whether the claimant has the ability to meet the job
> demands found in phase two despite the mental and/or physical
> limitations found in phase one. . . .; *Henrie v. United States Dep't of*
> *Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).  At each
> of these phases, the ALJ must make specific findings.  *See Henrie*,
> 13 F.3d at 361.

*Id.*

As set forth above, the ALJ evaluated and made specific findings regarding Ms. Bowman's physical residual functional capacity as required at phase one of the step-four analysis, and concluded that Ms. Bowman retained "the residual functional capacity to perform light work with limited use of her left hand and occasional stooping." Aplt. App., Vol. II at 22. After noting, for purposes of phase two, that the VE "testified that the claimant's past work as a housekeeper, food preparation worker, cashier, fast food worker and hostess are classified in the *Dictionary of Occupational Titles* as light work activity," *id.*, the ALJ then found at phase three that Ms. Bowman's "past relevant work . . . did not require the performance of work-related activities precluded by her residual functional capacity. . . ." *Id.*

We agree with Ms. Bowman that the ALJ's step-four analysis was legally deficient. As Ms. Bowman explains in her opening brief:

> Here, the ALJ found Ms. Bowman to have "limited use" of her left hand as part of her RFC. (II Aplt. App. at 22). The ALJ also found that Ms. Bowman could perform her past relevant work as a cashier, housekeeper, food preparer, fast food worker, and hostess. *Id.* However, not only did he fail to address the impact of this relatively vague restriction on Ms. Bowman's ability to perform her past relevant work with the VE (II Aplt. App. 265-72), but the ALJ also failed to make any findings regarding the handling demands of such work in his decision. (II Aplt. App. at 17-23).

> Further, because he failed to make the necessary findings at phase two, the ALJ was unable and failed to make the necessary "function by function" comparison between Ms. Bowman's limited use of her left hand and the demands of her past work as required at phase three. (II Aplt. App. at 17-23). Due to these failures, the

-6-

record lacks the necessary documentation concerning the impact Ms. Bowman's limited use of her left hand would have on her ability to perform her past relevant work (which all require frequent to constant handling of objects); or any evidence supporting the ALJ's finding that Ms. Bowman could perform such work despite that limitation.

Aplt. Br. at 18; *see also Winfrey*, 92 F.3d at 1024-25 ("Having failed to complete phase two appropriately, the ALJ was unable to make the necessary findings at phase three about plaintiff's ability to meet the . . . demands of his past relevant work despite his . . . impairments.").

As noted by Ms. Bowman, all of her past jobs require frequent or constant "handling," which is defined as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands," and, at the very least, this means that she must be able to perform such handling activities "from 1/3 to 2/3 of the time" during a normal workday. *See* EMPLOYMENT & TRAINING ADMIN., U.S. DEP'T OF LABOR, SELECTED CHARACTERISTICS OF OCCUPATIONS DEFINED IN THE REVISED DICTIONARY OF OCCUPATIONAL TITLES C-3; *see also id.* at 132 (food assembler, kitchen and housekeeper - DOT Codes 319.484-010 and 323.687-014), 333 (cashier II - DOT Code 211.462-010), 359 (host/hostess - DOT Code 352.667-010), and 365 (fast-foods worker - DOT Code 311.472-010 (this job requires handling "constantly" (2/3 or more of the time)))[1] After the VE

---

[1] It is well established that "the agency accepts the [definitions in the *Dictionary of Occupational Titles*] as reliable evidence at step four of the
(continued...)

identified the appropriate DOT Codes for Ms. Bowman's prior jobs, the ALJ could have taken administrative notice of this job information, and then asked the VE to give an opinion concerning whether Ms. Bowman's limited use of her left hand would affect her ability to perform the required handling activities. *See Winfrey*, 92 F.3d at 1025. The ALJ did not pursue such an inquiry, however, and did not otherwise make the necessary findings at phases two and three of the step-four analysis. As a result, we must remand this case to the Commissioner for further proceedings regarding phases two and three of step four and, if necessary, step five.

**B. SSR 06-03p and Nurse Hancik.**

Linda W. Hancik is a registered nurse and family nurse practitioner. She was Ms. Bowman's primary medical provider during the time period at issue here. In a letter dated November 25, 2002, Nurse Hancik states that Ms. Bowman has been a patient of hers for approximately thirteen years; that Ms. Bowman "has multiple health problems that impact her daily life"; and that Ms. Bowman's "degenerative joint disease prevents her from standing or sitting for long periods." Aplt. App., Vol. II at 245. In his decision, the ALJ discussed Nurse

---

[1](...continued)
functional demands and job duties of a claimant's past job as it is usually performed in the national economy." *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999) (quotations omitted).

Hancik's opinion regarding Ms. Bowman's ability to stand or sit as part of his assessment of Ms. Bowman's residual functional capacity:

> The undersigned notes that no work related restrictions have been placed on the claimant by any treating source; however, Linda W. Hancik, a family nurse practitioner was of the opinion that the claimant's degenerative joint disease prevents her from standing or sitting for long period[s] . . . . On consultative examination, it was reported [by Dr. Metcalf] that she did have some limitation of range of motion of the lumbar spine with tenderness and some decreased limitation in range of motion of the left wrist. She did have 3/5-grip strength in each hand. She had good muscle strength and tone in both upper and lower extremities. She was able to heel/toe walk, tandem walk and the gait was normal with a slight limp favoring the right side. She had good dexterity of her fingers.
>
> Accordingly, the undersigned finds the claimant retains the residual functional capacity to perform light work with limited use of left hand and occasional stooping.

*Id.* at 21.

Ms. Bowman contends that the ALJ's evaluation of Nurse Hancik's opinion was legally deficient because he failed to comply with the requirements of SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006), a Social Security Ruling that was published by the Commissioner almost a year and a half after the ALJ issued his decision in this case. According to Ms. Bowman:

> SSR 06-3p requires ALJs to evaluate opinions by medical providers who do not qualify as 'acceptable medical sources' under the factors cited in 20 C.F.R. § 416.927(d). . . . It also requires ALJs to explain the weight given to opinions by those sources or provide a discussion of the evidence in the decision which allows a reviewer to follow the ALJ's reasoning when such opinions may have an effect on the outcome of the case. . . . Here, while acknowledging Nurse Hancik's opinions, the ALJ did not explain the weight he attached to these

opinions nor explain why he rejected them. As such, since SSR 06-3p should have been applied retroactively due to the fact that it merely clarified existing law, . . . the ALJ's failure to follow its procedures in evaluating Nurse Hancik's opinions also constituted reversible legal error.

Aplt. Br. at 19.

As the Eighth Circuit recently recognized, "SSR 06-3p is a clarification of existing SSA policies." *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007). Specifically, the "ruling clarifies how [the Commissioner] consider[s] opinions and other evidence from medical sources who are not 'acceptable medical sources.'" SSR 06-03p, 2006 WL 2329939 at *4. As explained in the ruling:

> [The existing] regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 C.F.R. 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id.* at *3.

In order to effectuate these policy considerations, the ruling states that disability "adjudicator[s] generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence

-10-

. . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *6. In addition, the ruling makes it clear that

> an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Id.* at *5.[2]

In this appeal, the Commissioner has not argued that it would be error to apply SSR 06-03p retroactively to Ms. Bowman's application for SSI benefits, and we recently applied the ruling and remanded, notwithstanding the ALJ had made his determination before the ruling was issued. *Frantz v. Astrue*, __ F.3d __, 2007 WL 4328794 at *2-3 (10th Cir. Dec. 12, 2007); *see also Sloan*, 499 F.3d at 889 (applying ruling and remanding despite fact that both ALJ and district court had made their determinations before ruling was issued). Instead, the

---

[2] Although SSR 06-03p recognizes the potential value of opinions from medical sources who are not "acceptable medical sources," the ruling also points out that it is still necessary to distinguish between "acceptable medical sources" and other medical sources. This is necessary because "[i]nformation from . . . 'other [medical] sources' cannot establish the existence of a medically determinable impairment." SSR 06-03p, 2006 WL 2329939 at *2. Further, "only 'acceptable medical sources' can give . . . medical opinions" and "be considered treating sources . . . whose medical opinions may be entitled to controlling weight." *Id.*

-11-

Commissioner asserts that "the ALJ's decision was consistent with SSR 06-03p."

Aplee. Br. at 16.  According to the Commissioner:

> The ALJ summarized the medical records from [. . . Nurse Hancik] and noted the inconsistencies between [her] opinion and other evidence.  For example, the ALJ noted the absence of work-related restrictions placed on Bowman from a treating source (Tr. 19, 21).  The ALJ also pointed out the findings of the consultative examiner, [Dr. Metcalf,] which were inconsistent with the nurse's opinion (Tr. 19, 21). . . .  This Court can easily follow the ALJ's reasoning in assessing the opinion of [Nurse Hancik].  Therefore, the Commissioner submits that the ALJ properly considered [her] opinion. . . .

*Id.* at 17.

The question of whether the ALJ's evaluation of Nurse Hancik's opinion was consistent with SSR 06-03p is a close one.  Given our determination that it is necessary to remand this case to the Commissioner for further proceedings with regard to the first issue raised by Ms. Bowman, we believe the best course of action is to direct the Commissioner to apply SSR 06-03p on remand and reconsider Nurse Hancik's opinion.  *See Frantz*, 2007 WL 4328794 at *3; *Sloan*, 499 F.3d at 889.  This approach is especially appropriate here, where we are troubled by the ALJ's apparent assumption that Dr. Metcalf's consultative examination findings were inconsistent with Nurse Hancik's opinion that Ms. Bowman's "degenerative joint disease prevents her from standing or sitting for long periods."  Aplt. App., Vol. II at 245.  On this point, we agree with Ms. Bowman that Dr. Metcalf's findings are instead arguably consistent with

-12-

Nurse Hancik's opinion. Most importantly, Dr. Metcalf specifically found that Ms. Bowman suffers from chronic low back pain, and he further reported that she had a slight limp on the right side, had a positive straight leg raising test in a reclining position, and had limited range of motion in her lumbar spine. *Id.* at 210-12. Unfortunately, Dr. Metcalf did not provide a medical opinion concerning Ms. Bowman's ability to stand or sit in a workplace setting, and it is pure guesswork to extrapolate one from the various findings that are set forth in his report.[3]

In sum, on remand, the Commissioner should reconsider Nurse Hancik's opinion in light of SSR 06-03p. We emphasize that we are not expressing an opinion as to the weight the Commissioner should give to Nurse Hancik's opinion, as that is an issue for the Commissioner to determine applying the factors that are set forth in SSR 06-03p. The Commissioner should also consider whether it would be helpful to have Dr. Metcalf or another consultative examiner complete an RFC assessment form for Ms. Bowman and provide a specific

---

[3] We note that a "DDS physician" (a nonexamining medical source) completed a "Residual Functional Capacity Assessment" form for Ms. Bowman in which it was reported that she could stand and/or sit for about six hours in an eight-hour workday. *See* Aplt. App., Vol. II at 4, 218. It appears that this conclusion was based solely on Dr. Metcalf's consultative examination report, and we think this report is too ambiguous in terms of assessing Ms. Bowman's functional limitations to support a medical opinion from a nonexamining physician about Ms. Bowman's ability to stand or sit. We also note that neither the ALJ in his decision nor the Commissioner in this appeal relied on the DDS physician's RFC assessment to support the denial of benefits in this case.

-13-

medical opinion concerning her ability to stand or sit during the relevant time frame.

The judgment of the district court is REVERSED and this case is REMANDED to the district court with instructions to REMAND the case to the Commissioner for further proceedings consistent with this opinion.