**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DUANE K. BARBER,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

      Defendant-Appellee.

No. 10-5134
(D.C. No. 4:09-CV-00226-TLW)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, **BRORBY**, Senior
Circuit Judge.

---

      Duane K. Barber appeals the Commissioner's denial of benefits, claiming

an Administrative Law Judge (ALJ) failed to (1) properly consider his medical

source evidence; (2) include all his impairments in a hypothetical question posed

to a Vocational Expert (VE); and (3) properly assess his credibility. We exercise

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Mr. Barber claimed he was disabled by schizophrenia or schizoaffective disorder, borderline-intellectual functioning, antisocial-personality disorder, attention-deficit disorder, oppositional-defiant disorder, depression, anxiety, and bipolar disorder. His appellate brief describes an individual who surrendered to aggressive impulses: As an adolescent, he threatened a teacher, was hospitalized in October 2000 for anger and behavioral issues, and quit high-school. After his alleged onset date, Mr. Barber spent time in prison for aggravated assault-and-battery with a crowbar. He sought treatment but was dismissed from his doctor's practice for becoming enraged when his request for narcotics was denied.[1]

Mr. Barber eventually applied for Supplemental Security Income, but the ALJ concluded at step five of the five-step sequential evaluation process, *see* 20 C.F.R. § 416.920; *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step process), that he was not disabled. The ALJ reasoned that Mr. Barber possessed the residual functional capacity (RFC) to perform the full range of work at all exertional levels, although he was limited to simple, repetitive tasks in a habituated and object-oriented setting. The ALJ further restricted Mr. Barber from intense interpersonal contact with coworkers and supervisors, and all contact with the public. The Appeals Council denied review,

---

[1]    The record suggests there was some question of drug abuse during the relevant time period, *see, e.g.,* Aplt. App., Vol. 2 at 114, but Mr. Barber's claims are not based on any alleged impairment relating to drug use.

and a magistrate judge, acting on the parties' consent, affirmed. Mr. Barber then brought his case to this court.

II

We review the Commissioner's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotation omitted). In conducting our review, "[w]e consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence . . . , but we [do] not reweigh the evidence or substitute our judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

A. Medical Source Evidence

Mr. Barber first contends the ALJ failed to properly evaluate the medical source evidence. As we understand his argument, Mr. Barber maintains the same step-three contention he made in the district court: that the ALJ failed to find he satisfied a listed impairment by rejecting the opinion of Dr. Cynthia Kampschaefer.[2] Dr. Kampschaefer, a non-treating agency physician, assessed

---

[2] Mr. Barber does not clearly contest the ALJ's step-three determination on appeal, but instead broadly (and vaguely) frames his argument in terms of the medical source evidence in general. In the district court, however, he specifically challenged the ALJ's treatment of the medical source evidence in the context of the ALJ's step-three determination. *See, e.g.,* Aplt. App., Vol. 1 at 19, 20. Given the nature of his argument in the district court, we presume Mr. Barber is not

(continued...)

Mr. Barber's mental impairments and believed he experienced moderate limitations in his activities of daily living (ADLs); social functioning; and ability to maintain concentration, persistence, and pace. *See* 20 C.F.R. § 416.920a(c). Dr. Kampschaefer also determined that Mr. Barber experienced one or two episodes of decompensation. *See id.* The ALJ agreed with Dr. Kampschaefer's assessment of Mr. Barber's level of social function and concentration, persistence, and pace, but found he had only mild limitations in his ADLs and experienced no episodes of decompensation. Based on these latter differences of opinion, Mr. Barber contends the ALJ rejected Dr. Kampschaefer's opinion without an adequate explanation.

Mr. Barber's contention fails because the ALJ properly explained his findings. Initially, the ALJ explained that Mr. Barber's mild restrictions in ADLs were supported by a function report indicating that he kept his room clean, enjoyed music, frequently left the house, spoke to his friends on the telephone, and visited friends at their homes. Likewise, the ALJ explained that Mr. Barber experienced no episodes of decompensation because his October 2000 hospitalization preceded his alleged onset date, he responded well to medication

---

[2](...continued)
advancing a new argument on appeal and, accordingly, construe his argument in the context of the ALJ's step-three decision.

after an altercation in prison, and his depression was stabilized with treatment.[3]

Although the ALJ's severity ratings differed from Dr. Kampschaefer's opinion, the ALJ ultimately endorsed her opinion in his final RFC assessment. Indeed, Dr. Kampschaefer believed Mr. Barber could perform simple tasks and relate on a superficial and incidental basis due to his problems with authority and aggression; accordingly, the ALJ limited Mr. Barber to simple, repetitive work in a habituated and object-oriented environment, with little or no interpersonal contact with coworkers or the public. Under these circumstances, no further explanation was necessary. *See generally Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."). In fact, the need for detailed analysis is particularly diminished here, because even if the ALJ had fully adopted Dr. Kampschaefer's assessment, her severity ratings

---

[3]     Mr. Barber suggests the ALJ failed to consider other potential episodes of decompensation, including the threat against his teacher, an alleged suicide attempt in which he cut his wrists, an outburst at his doctor's office, and his "jail experience." Aplt. Br. at 20. To satisfy the decompensation criterion of listings 12.05 and 12.08, Mr. Barber must have experienced "repeated episodes of decompensation, each of extended duration," that is, each episode of decompensation must have lasted a minimum of two weeks. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00C(4). Nothing in the record indicates that any of these alleged decompensation events lasted two weeks (assuming, of course, that by "jail experience," Mr. Barber means his actual commission of assault and battery, rather than his incarceration, which was considered by the ALJ). Nor is there evidence in the record concerning the medical impact of these events. And, it appears from the record that at least one of these events—the threat against Mr. Barber's teacher—preceded the alleged onset date. *See* Aplt. App., Vol. 2 at 88. Consequently, the ALJ was not required to consider these other events.

still fell short of the degree of limitation necessary to satisfy the listings' functional criteria.

Mr. Barber makes a related argument that the ALJ should have rejected the report of the consultative examiner, Dr. Denise LaGrand. Dr. LaGrand noted that Mr. Barber had a "low average" ability to adequately perform at work, cope with work-stress, and interact with coworkers and supervisors. Aplt. App., Vol. 2 at 109. The ALJ relied on this opinion to formulate his RFC assessment, but Mr. Barber contends Dr. LaGrand's report is unreliable because she did not make a final diagnosis. This argument is unavailing because Dr. Kampschaefer diagnosed Mr. Barber with antisocial behavior. Hence, as the district court correctly explained, there was no need for a second diagnosis. *See* 20 C.F.R. § 416.919n(d).

B. Vocational Expert's Hypothetical

Mr. Barber next contends the ALJ posed an inaccurate hypothetical question to the VE. It is well settled that the hypothetical question posed to the VE must precisely reflect all, but only, the impairments and limitations borne out by the record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Dr. Kampschaefer found marked limitations in Mr. Barber's ability to understand, remember, and carry out detailed instructions, as well as his ability to interact appropriately with the general public. She determined he had moderate limitations in his ability to accept instructions and respond to criticism from

supervisors, and get along with coworkers or peers without distracting them or exhibiting extreme behavior.  Based on these restrictions, the ALJ posed the following hypothetical question:  "I would like you to limit him to doing simple repetitive tasks in a habituated work setting, which is also object oriented, with no intense interpersonal contact with coworkers or supervisors, and no public contact."  Aplt. App., Vol. 2 at 185.  The ALJ's question accurately reflected Dr. Kampschaefer's opinion.  Mr. Barber contends the limitations were excluded from his RFC, but the record disproves his point.  *See id.* at 16 ("The claimant is able to do simple, repetitive work in a habituated and object oriented setting.  He is not able to have intense interpersonal contact with co-workers or supervisors and can have no public contact.").

      C.  Credibility Analysis

Finally, Mr. Barber contends the ALJ improperly discredited his testimony.  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quotation omitted).  An ALJ's credibility determination must be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quotation omitted).

The ALJ discredited Mr. Barber's "statements concerning the intensity, persistence and limiting effects of [his] symptoms . . . to the extent they [were] inconsistent with the [RFC] assessment." Aplt. App., Vol. 2 at 17. Among other things, the ALJ noted that Mr. Barber claimed to have trouble sleeping but had reported sleeping better after receiving medication in prison. Mr. Barber contends this was only a temporary improvement, and we find nothing in the record to suggest otherwise. A prison-doctor prescribed Elavil to help Mr. Barber sleep. The medication enabled him to sleep better, but two months later, he reported persistent sleep problems, and his dosage was again increased. Mr. Barber was discharged from prison on the higher dose, but nothing in the record indicates he continued taking Elavil or was sleeping well at the time of his hearing.

Nonetheless, other evidence cited by the ALJ impeached Mr. Barber's credibility. The ALJ noted that Mr. Barber reported having low energy and an inadequate diet to Dr. LaGrand, but he twice indicated to prison staff that he had good energy and ate well. The ALJ also cited Mr. Barber's prison discharge summary, which stated he was stable on medication, but recognized this was inconsistent with Mr. Barber's claims of experiencing rage, depression, anger, and anxiety. Further, the ALJ observed that although Mr. Barber claimed to suffer from panic attacks, Dr. Darrell Mease, a treating physician, assessed only generalized anxiety and bipolar disorder, not true panic attacks. Mr. Barber

-8-

disputes this assessment, asserting Dr. Mease was uncertain whether he experienced true panic attacks, but the doctor expressly stated that "[t]rue panic attacks apparently do not occur." Aplt. App., Vol. 2 at 158. The doctor then assessed generalized anxiety and bipolar disorder, not panic attacks. In any event, the ALJ finally noted that Mr. Barber also testified that he recently had been fired from a job, but later stated that he stopped working. Given this discussion, the ALJ adequately linked his credibility finding to substantial evidence.[4]

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[4] Mr. Barber suggests the ALJ failed to properly assess the credibility of his mother, who completed several forms for him. The ALJ discussed Mr. Barber's testimony, however, and observed that the answers his mother provided on the forms were not a reliable source of Mr. Barber's own allegations. There was no error.