FILED
United States Court of Appeals
Tenth Circuit

July 30, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MAY ANNIE MOUA,

Plaintiff-Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,[*]

Defendant-Appellee.

No. 12-5161
(D.C. No. 4:11-CV-00296-FHM)
(N.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **TYMKOVICH**, **ANDERSON**, and **MATHESON**, Circuit Judges.

May Annie Moua appeals the district court's order upholding the

Commissioner's denial of her application for social security disability benefits.  We

exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and affirm.

---

[*]     In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant-appellee in this action.

[**]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.   BACKGROUND

Ms. Moua alleges disability since March 1, 2004, due to damage to her left arm she sustained in a 2001 on-the-job injury that caused pain and weakness in her left arm, wrist, hand, and fingers. She also alleges that she suffers from headaches, right shoulder pain, right arm pain and numbness, high blood pressure, depression, and fatigue.[1] Garrett Watts, M.D., treated her left arm pain and weakness beginning in September 2007. In November 2007, he performed surgery on her left forearm to alleviate pain. Dr. Watts released her from his care on June 20, 2008, when he assessed at 27% her permanent partial disability for workers' compensation purposes, noted that she had chronic pain, and opined that she was under no particular work restrictions. Ms. Moua also received pain medications and treatment from Badresh Bhakta, M.D., from February 2004 through December 3, 2009. In addition, she received treatment from Michael Peterson, D.C., during 2009.

After filing for benefits, Ms. Moua was examined by G. Bryant Boyd, M.D., who found "[n]o evidence of ulnar nerve dysfunction in the left hand," and opined that she could "use both hands for gross and fine manipulation." Aplt. App. Vol. 3 at 243. Ms. Moua underwent a mental examination by Michael Morgan, Psy.D., who

---

[1]   Ms. Moua was last insured for disability benefits as of December 31, 2008. Consequently, she must establish disability between March 1, 2004 and December 31, 2008. *See Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007) (stating claimant must establish onset of disability before the date her insured status expired).

did not diagnose a mental disorder and stated that she had only mild functional limitations.

Ms. Moua requested and received a hearing before an administrative law judge (ALJ) at which she was represented by counsel. Ms. Moua and a vocational expert (VE) testified. The ALJ determined that Ms. Moua could not perform her past relevant work, but she could perform other work that existed in substantial numbers in the national economy. Accordingly, he denied benefits at step five of the five-step sequential evaluation process. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step framework for determining disability). The Appeals Council denied review and the district court affirmed.

## II.    ANALYSIS

### A.    Legal Standards

We review the agency's decision to ascertain whether it is supported by substantial evidence in the record and to evaluate whether the correct legal standards were applied. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted). To determine whether substantial evidence supports the agency's decision, we examine the record as a whole, but we do not reweigh the evidence. *Id.* We also do not "substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270,

1272 (10th Cir. 2008) (internal quotation marks omitted).  In this context, "disability" requires both an "inability to engage in any substantial gainful activity" and a "physical or mental impairment, which provides reason for the inability."  *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted).

### B.    Medical Evidence

Ms. Moua argues that the ALJ failed to properly evaluate and weigh the medical evidence.  First, she contends that although the ALJ assigned great weight to the Disability Determination Service's (DDS) physical assessment, he ignored the statement, "[s]ome reaching and fingering may be limited on the Left," Aplt. App. Vol. 3 at 271, 332.  But this statement described only a possible limitation; moreover, it relied on Dr. Boyd's report in which he stated, "'she can use both hands for gross and fine manipulation.'"  *Id.* at 270 (quoting *id.* at 243).  Therefore, we conclude that Ms. Moua's challenge to the ALJ's treatment of the medical opinions concerning her use of both hands does not require a remand.

Ms. Moua also claims that even though the ALJ gave significant weight to Dr. Boyd's opinion, he failed to recognize Dr. Boyd's statement that she had "glove-like decreased sensation" in her left hand.  Aplt. App. Vol. 3 at 243.  She contends that decreased sensation could interfere with her ability to finger, handle, and manipulate objects.  Her argument is foreclosed, however, by Dr. Boyd's opinion that Ms. Moua could "use both hands for gross and fine manipulation."  *Id.*

- 4 -

Ms. Moua next objects to the ALJ's decision to give significant weight to Dr. Watts's opinion that she was released to work without restrictions in April 2008. She contends that this opinion was eroded by Dr. Watts's June 2008 finding of left carpal tunnel syndrome, markedly diminished sensation to touch on the left forearm, and a 5% upward adjustment of her workers' compensation disability rating from an earlier rating. But Dr. Watts's June 2008 report, while recognizing that Ms. Moua incurred some "sensory loss, pain, and weakness," again opined that she was "under no particular work restrictions." Aplt. App. Vol. 3 at 215. Consequently, the ALJ appropriately relied on Dr. Watts's opinion that Ms. Moua was released to work without restrictions.

Ms. Moua further contends that the ALJ failed to weigh the opinions of her treating physician, Dr. Bhakta. She argues that he opined in February 2004 that her arm pain precluded all activity indefinitely and he documented her continued pain and numbness through December 3, 2009. But Dr. Bhakta's treatment notes do not indicate that he performed any medical testing to support his indefinite restriction. *Cf. Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (holding treating physician's medical opinion "must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record"). And contrary to his February 2004 statement that Ms. Moua could not perform any activity, he suggested that she explore job retraining and alternate employment in February 2004, July

- 5 -

2004, and November 2005. Aplt. App. Vol. 3 at 360, 366, 376. Overall, Dr. Bhakta's treatment notes do not offer any medical opinions concerning Ms. Moua's abilities or limitations. Rather, they document her complaints and chronicle the pain medications and treatment he prescribed for her. Thus, there was no pertinent medical opinion for the ALJ to weigh. *Cf.* 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions").

Lastly, Ms. Moua argues that the ALJ failed to weigh the opinion of her treating chiropractor, Dr. Peterson. Yet Dr. Peterson provided no opinion concerning Ms. Moua's abilities or limitations. As with Dr. Bhakta, there was no relevant opinion for the ALJ to weigh.

**C.    RFC Analysis**

Ms. Moua argues that the ALJ erred by failing to include all of her impairments in assessing her Residual Functional Capacity (RFC). She maintains that he did not include a limitation on the use of her left arm and hand, even though he found at step two that her neuropathic left upper extremity pain was a severe impairment. Although the ALJ's written decision did not specify a limitation on the left arm and hand, it is clear from the hypothetical question posed to the VE that the ALJ recognized such a limitation. The ALJ included in the hypothetical the following relevant limitation: "With the left, left hand and arm, she . . . could only

- 6 -

perform occasional overhead reaching." Aplt. App. Vol. 2 at 47. In addition, the ALJ imposed restrictions on Ms. Moua's ability to lift, carry, and climb, and directed the VE to consider only light and sedentary work. *See id.* (restricting occasional lift/carry to 20 pounds, frequent lift/carry to 10 pounds; no climbing ladders, ropes, or scaffolds). In response, the VE identified jobs such a person could perform that exist in significant numbers in the national economy. The ALJ relied on the VE's opinion that included an upper left extremity restriction, so any error by the ALJ in omitting the restriction from his written decision is harmless and does not require a remand. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Ms. Moua also argues that the jobs identified by the VE as appropriate for her were not appropriate because they all require frequent use of both hands. The ALJ relied on the opinions of Dr. Watts, "who released the claimant to return to work without restrictions," and Dr. Boyd, "who opined the claimant could use both hands for gross and fine manipulation." Aplt. App. Vol. 2 at 18. Ms. Moua again argues that the statement in the DDS report suggesting some reaching and fingering limitation should be given controlling weight. But as explained above, this statement relied on Dr. Boyd's report that, in turn, found no limitation in the use of both hands.

Accordingly, the ALJ's determination that Ms. Moua could perform the jobs identified by the VE is supported by substantial evidence.

Ms. Moua next argues that the ALJ erred in not including in the hypothetical question posed to the VE her depression, hypertension, and headaches. But the ALJ found that her "affective mood disorder did not cause more than minimal limitation," *id.* at 14, and that it imposed no work limitations, *id.* at 47. Ms. Moua does not point to any medical or psychiatric evidence showing that her depression imposed work restrictions. She testified that she was unable to leave the house four days a week due to pain and depression, but the ALJ found this claim not credible. Similarly, she identifies no work limitations caused by her hypertension and headaches. Therefore, the hypothetical question posed to the VE "adequately reflected the impairments and limitations that were borne out by the evidentiary record." *Newbold v. Colvin*, __ F.3d __, 2013 WL 2631530, at *8 (10th Cir. June 13, 2013) (internal quotation marks and brackets omitted).

### D. Credibility Analysis

Finally, we consider Ms. Moua's argument that the ALJ erred in finding not credible her allegations of disabling pain. It is well-established that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). Those

findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004) (internal quotation marks omitted). In evaluating a claimant's allegations of disabling pain, the ALJ

> is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary*, 695 F.3d at 1166-67. Here, the ALJ found that Ms. Moua had satisfied the first two elements, and proceeded to consider whether her pain was disabling. After considering the relevant factors, including her attempts to find relief from pain, the efficacy of her November 2007 arm surgery, her daily activities, and her medications, *see id.* at 1167 (listing relevant factors), the ALJ found that her claim of disabling pain was not credible.

Ms. Moua complains that the ALJ did not state which statements of her testimony he credited as true and which he disbelieved. "[A]lthough the ALJ may not have identified any specific incredible statements as part of his evaluation of Ms. [Moua's] hearing testimony, his approach performed the essential function of a credibility analysis by indicating to what extent he credited what she said when determining the limiting effect of her symptoms." *Id.* at 1170.

- 9 -

As noted above, the ALJ discussed Ms. Moua's hearing testimony about her physical abilities and limitations, pain, daily activities, and medical treatment. For example, he observed that while Ms. Moua testified that her back pain was so severe that she was required to lie down for hours each day, there was no medical evidence of a back disorder or treatment for such a disorder. He then referred to Dr. Boyd's examination that revealed normal ranges of movement in Ms. Moua's back, neck, and all joints. Similarly, the ALJ compared Ms. Moua's hearing testimony that she suffered disabling pain with her conflicting statements to her physicians that her pain was managed with medication. Also, she reported to Dr. Watts that the November 2007 surgery improved her arm pain.

Even though the ALJ considered and evaluated her pain claims, Ms. Moua emphasizes that the ALJ undervalued her persistent attempts to find relief from pain, pointing to her pain-management medications prescribed by Dr. Bhakta.[2] But the fact that she took pain medication does not mean she was disabled. On the contrary, an impairment is not disabling when medications adequately control it without significant side effects. *See Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir. 1987).

---

[2] Ms. Moua challenges the ALJ's mention of her report of pain to Dr. Bhakta as 3/10 on September 27, 2007, pointing out that on many other visits she reported that her pain was more severe. She also reported relatively low levels of pain on numerous other occasions. Based on our review of the record as a whole, we conclude that the ALJ's reference to the September 27 report does not require a remand.

And "'disability' requires more than the mere inability to work without pain." *Wall*, 561 F.3d at 1068 (internal quotation marks omitted).

Ms. Moua also claims that in assessing her credibility, the ALJ failed to consider the side effects of her medications. She claims they caused drowsiness, relying on her own statements, which the ALJ did not fully credit, and a treatment note by Dr. Bhakta in February 2004 that she was "unable to take the Neurontin at work because it does cause her to be somewhat drowsy, but she does take Celebrex as well as some other over-the-counter medication," Aplt. App. Vol. 3 at 359. Dr. Bhakta's single treatment note, however, does not indicate a side effect that limited her work ability, so the ALJ had no duty to discuss it. *Cf. Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (stating that an ALJ must discuss significantly probative evidence he rejects).

Ms. Moua further claims that the ALJ employed "disfavored boilerplate" to conclude that her testimony was not credible to the extent that it conflicted with his determination that she was not disabled. Aplt. Opening Br. at 29. In assessing a claimant's credibility, "the use of standard boilerplate language will not suffice," but only "in the absence of a more thorough analysis." *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004); *see also Keyes-Zachary*, 695 F.3d at 1170 (rejecting boilerplate argument because the ALJ's decision referred to specific evidence). Here, the ALJ conducted the required analysis by discussing and evaluating Ms. Moua's hearing testimony, as well as the medical evidence and her reports to her doctors

about her pain and limitations. We also reject Ms. Moua's claim that the ALJ improperly determined her RFC and ability to work, and then evaluated her credibility, resulting in a flawed credibility finding. The ALJ discussed Ms. Moua's testimony and the medical evidence in reaching his conclusion on credibility, giving no indication that he tailored that conclusion to fit his RFC determination. Thus, the ALJ "clearly and affirmatively linked his adverse determination of Claimant's credibility to substantial record evidence . . . and our limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the agency." *Wall*, 561 F.3d at 1070 (citation, internal quotation marks, and brackets omitted).

## III. CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Stephen H. Anderson
Circuit Judge