**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KENNETH L. PATTERSON,

  Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

  Defendant - Appellee.

No. 16-3029
(D.C. No. 6:14-CV-01312-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

  Kenneth Patterson seeks reversal of the district court's judgment upholding the decision of an administrative law judge (ALJ) to deny his application for social security disability insurance benefits and supplemental security income benefits. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We affirm.

---

  [*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    BACKGROUND

Mr. Patterson, who was born in 1964, filed for disability benefits claiming he became disabled on November 11, 2010, due to various physical and mental impairments.  On January 11, 2013, the ALJ issued an unfavorable decision concluding that, although Mr. Patterson could not perform his past relevant work, he had the residual functional capacity (RFC) to perform other work that existed in substantial numbers in the national economy.[1]  Accordingly, the ALJ denied benefits at step five of the five-step sequential evaluation process.  *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step framework for determining disability).  The Appeals Council received additional medical and psychological evidence and denied review.  The district court affirmed.

## II.    DISCUSSION

"Under the Social Security Act, a claimant is disabled if [he] is unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (ellipsis and internal quotation marks omitted).  "We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal

---

[1] "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996).  It "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  *Id.* at *1.

error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted). We examine the record as a whole, but we do not reweigh the evidence. *Id.* We also do not "substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

## A. Listing 1.04(A)

Mr. Patterson argues that his back problems met or medically equaled the severity of Listing 1.04 for disorders of the spine. "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits." *Wilson*, 602 F.3d at 1139 (internal quotation marks omitted). Mr. Patterson contends the ALJ failed to explain why his back condition did not meet this listing and failed to recognize the medical evidence supporting his claim.

> Listing 1.04 applies to
>
> [d]isorders of the spine (e.g., herniated nucleus polposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by

3

sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

. . . .

20 C.F.R. Pt. 404, subpt. P, App. 1, § 1.04 (emphasis omitted).

In determining Mr. Patterson did not have an impairment that met or equaled the severity of listing 1.04, the ALJ observed that he did not have "nerve root compression (though the evidence on this is somewhat equivocal), spinal arachnoiditis or lumbar spinal stenosis," as the listing requires. Aplt. App. Vol. 1, at 11. The ALJ further observed that in September 2010 Mr. Patterson had reported pain for the previous six months, but no "numbness, weakness, bladder or bowel or sexual dysfunction." *Id.* at 15. The ALJ noted a cervical-spine MRI showing "some degeneration," but "no significant compressive radiculopathy." *Id.* The ALJ cited an October 2010 lumbar-spine MRI that "showed some degenerative changes in the thoracic and lumbar spine without evidence of significant herniation or spinal stenosis." *Id.* at 15. The ALJ also cited a March 2012 CT study that "reflected mild degenerative disease at L3-L4 and L4-L5 with no disc protrusion at any level, [with] angular bulging at L4-L5 . . . result[ing] in mild central spinal stenosis with no neuroforaminal stenosis." *Id.*[2]

Mr. Patterson relies on medical records ranging from October 2010 through March 2013 to argue that his condition met the requirements of Listing 1.04(A).

_____

[2] The ALJ included these findings in his analysis at step four. Mr. Patterson acknowledges that this procedure was not erroneous. *See Fischer-Ross*, 431 F.3d at 733 (holding ALJ's findings made at steps four and five that confirmed the step-three rejection of the listings was not reversible error).

4

Aplt. Opening Br. at 16-18. The medical reports do not document one of the elements of Listing 1.04(A) – nerve root compression. And even if the conditions he claims are equivalent to nerve root compression qualify under the listing, *see id.* at 17, the evidence does not establish that all of the medical conditions were present at the same time for at least twelve months, as required to qualify. *See* 20 C.F.R. §§ 404.1525(c)(3) (to satisfy listing criteria, impairment must "satisf[y] all of the criteria of that listing" and "meet[] the duration requirement"); 404.1509 (durational requirement means the impairment "is expected to result in death, [or] it must have lasted or must be expected to last for a continuous period of at least 12 months").

Mr. Patterson also asserts that the October 2010 lumbar-spine MRI, on which the ALJ relied, correctly reflected his condition, while the March 2012 CT study, on which the ALJ also relied, was incorrect. He points to a March 8, 2013, report of a CT myelogram showing "severe neural foraminal narrowing" and "a disc bulge on the left at L4-L5," Aplt. App. Vol. 4, at 646, which he contends demonstrates that the March 2012 study was inaccurate. But a CT scan performed January 21, 2013, revealed equivocal findings, including "no cord compression," "narrowing of the left C4-5 neural foramen," "mild narrowing of the left C5-6 in the left C6-7 neural foramina," "no evidence of significant central spinal stenosis," and "[n]o other potential focal disc protrusions." *Id.* at 649. Thus, the 2013 reports do not rebut the ALJ's finding that there was "[no] nerve root compression (though the evidence on this is somewhat equivocal)," *id.* Vol. 1, at 11.

Mr. Patterson further argues that pain can substitute for a medical finding required by a listing.  He relies on 20 C.F.R. § 404.1526, which explains how an impairment can be medically equivalent to a listed impairment.  A claimant's symptoms, including pain, are evaluated pursuant to 20 C.F.R. 404.1529(d)(3).  *See* § 404.1526(b)(4) (referring to § 404.1529(d)(3)).  Section 404.1529(d)(3) specifies that the agency "will not substitute [a claimant's] allegations of pain . . . for a missing or deficient sign or laboratory finding to raise the severity of [the claimant's] impairment(s) to that of a listed impairment."  Thus, Mr. Patterson's pain complaints cannot substitute for medical findings to satisfy medical equivalence.

Mr. Patterson maintains that the ALJ improperly evaluated the medical evidence because he did not consider all of the evidence or discuss the evidence he chose not to rely on.  But the ALJ was not required to discuss every piece of evidence.  *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014).  Furthermore, the ALJ stated that he had considered all of the evidence and we take him at his word. *See Flaherty*, 515 F.3d at 1071 (We "take a lower tribunal at its word when it declares that it has considered a matter"  (internal quotation marks omitted)). Substantial evidence supports the ALJ's conclusion that Mr. Patterson did not meet his burden to establish that he satisfied Listing 1.04(A).  His failure to satisfy all of the listing's criteria means that he cannot prevail at step three as a matter of law.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

6

## B. Residual Functional Capacity

Mr. Patterson challenges the ALJ's determination of his RFC at Step 4. The ALJ determined that Mr. Patterson retained the RFC to perform less than a full range of light work. The ALJ specified restrictions on his physical abilities, including lifting, carrying, standing, walking, sitting, and reaching. The ALJ determined that Mr. Patterson could "perform simple, unskilled work involving routine, repetitive tasks." Aplt. App. Vol. 1, at 13. Mr. Patterson asserts that these restrictions fail to properly account for his back condition as discussed above, as well as his mental impairments. He argues the ALJ erred in his assessment of the state agency physicians' opinions, Mr. Patterson's activities, his inconsistent statements in the record, the report from his employer, and other credibility factors.

As discussed above, Mr. Patterson contends his back impairment was disabling at step three. He does not further argue that the restrictions the ALJ found at step four were inappropriate.

Mr. Patterson next claims the ALJ failed to take into account his limitations in social functioning and concentration, persistence, and pace. He bases this argument on the ALJ's step-three finding that these limitations were moderate. But this finding was not an RFC assessment; rather it was "used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The ALJ's finding of moderate limitations at step three "does not necessarily translate to a work-related functional limitation for

7

the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).

In determining Mr. Patterson's mental RFC, the ALJ considered the opinion of Michael Klemens, Ph.D., L.P., who performed a consultative psychological evaluation. According to Dr. Klemens, Mr. Patterson's social functioning did not appear to be limited, he had no difficulty in understanding instructions or recalling information, he had average attention and concentration, and his social functioning did "not appear to be limited." Aplt. App. Vol. 3, at 425. The state agency medical consultants, Drs. Wilkinson, Cohen, and Timmerman opined that Mr. Patterson was capable of simple, routine, light work. The ALJ gave substantial weight to those assessments.

Mr. Patterson claims the March 2013 narrative report by his treating psychologist, John Makings, M.S., L.M.L.P, demonstrated that his mental impairments were more severe than the ALJ found. Mr. Makings' report and some treatment notes from the Center for Counseling and Consultation were submitted to, and reviewed by, the Appeals Council after the ALJ issued his decision. Mr. Makings assessed Mr. Patterson as "Markedly Limited" in all areas of functioning, the most severe category available on the form. *See* Aplt. App. Vol. 4, at 662-63. Mr. Makings' treatment notes describe psychological problems caused by Mr. Patterson's arrest on criminal charges. *See id.* at 512, 499, 497. But his narrative report does not refer to this situational stressor, nor does it indicate that Mr. Patterson's psychological limitations had lasted or could be expected to last at

8

least twelve months. *See Wilson*, 602 F.3d at 1140 (stating disability requires a mental impairment to last for "a continuous period of not less than 12 months"). Moreover, Mr. Makings' assessment is inconsistent with the other psychological evidence in the record. Therefore, there is no reasonable possibility that the evidence would have changed the outcome if the ALJ had considered it.

Having noted above that the ALJ was not bound by his step-three assessment of moderate limitations, we find no reversible error in the ALJ's reliance on the psychological opinions indicating lesser limitations. The evidence in the record regarding Mr. Patterson's mental status supports the ALJ's RFC determination that limiting him to "simple, unskilled work involving routine, repetitive tasks," Aplt. App. Vol. 1, at 13, would adequately account for his limitations in social functioning, and in concentration, persistence, and pace. *Cf. Vigil*, 805 F.3d at 1204 (holding that the ALJ properly accounted for the claimant's moderate limitations in concentration, persistence, and pace in the RFC assessment by limiting him to unskilled work).

Mr. Patterson also complains that the ALJ did not perform the function-by-function evaluation contemplated by SSR 96-8p, 1996 WL 374184, at *3. But an explicit function-by-function evaluation was not required because the ALJ considered the work restrictions necessary to accommodate Mr. Patterson's mental limitations. *Cf. Hendron*, 767 F.3d at 956-57 (holding ALJ's failure to perform explicit function-by-function analysis was not error where ALJ did not overlook limitations or restrictions pertinent to the work the claimant could do).

Next, Mr. Patterson complains that the state agency medical consultants' opinions were issued before much of the medical evidence concerning his spine disorders was generated. But he cites no rule preventing the ALJ from giving substantial weight to the state agency expert's opinions. Rather, he seeks to have this court reweigh the evidence to his benefit, which we do not do, *see Flaherty*, 515 F.3d at 1070.

Mr. Patterson also challenges the ALJ's credibility determination. He asserts that the ALJ improperly found him less than fully credible by (1) relying on the fact that he had not participated in physical therapy or undergone back surgery; (2) incorrectly describing his daily activities and finding that some of his statements were inconsistent; (3) suggesting that he worked 24 hours a week, when in fact he worked only ten hours a week at most; and (4) not discussing in full the report from his employer. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (internal quotation marks omitted).

Mr. Patterson concedes that his treating physician recommended physical therapy but "ultimately . . . acquiesced to [Mr. Patterson's] wishes" for epidural steroid injections instead. Aplt. App. Vol. 4, at 598. It was not improper for the ALJ to consider this circumstance in assessing Mr. Patterson's credibility. *See Decker v.*

10

*Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (stating ALJ legitimately factored into credibility determination the claimant's failure to follow prescribed treatment). And although Mr. Patterson had back surgery, the surgery did not take place until June 20, 2013, well after the ALJ's decision, and the surgical report did not specify that the findings applied to the pre-ALJ-decision period. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (holding agency must consider evidence submitted after the ALJ's decision if, among other things, the evidence related to the period on or before the date of the ALJ's decision). Thus, we perceive no reversible error in the ALJ's consideration of this credibility factor.

As for the description of his daily activities and his explanations of why his statements were not inconsistent, Mr. Patterson asks this court to reweigh the evidence in his favor. Again, we do not do so. *See Flaherty*, 515 F.3d at 1070.

Next, Mr. Patterson contends the ALJ misperceived his work situation. On the contrary, the ALJ clearly recognized that Mr. Patterson was working ten hours a week as a cook at the Sonic restaurant at the time of the administrative proceedings, although in the past he had worked longer hours. *See* Aplt. App. Vol. 1, at 18. In addition, the ALJ acknowledged Mr. Patterson's testimony that he "might miss a couple days [of work] a week, which, supposedly, was fine with his employer," and recognized that the employer's report "noted some difficulty with function." *Id.* Mr. Patterson asserts that the ALJ was required to discuss all of the remarks in the employer's report, such as difficulty maintaining adequate pace and adapting to work changes. These limitations were adequately addressed by the psychological

11

evidence. Moreover, the ALJ did not, as Mr. Patterson argues, conclude that Mr. Patterson could perform full-time work based only on his part-time work at Sonic. Rather, the ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all the evidence in formulating the RFC.

Mr. Patterson contends the ALJ improperly noted that no physician had stated he was disabled. In the context of the ALJ's overall analysis, this was not error. *Cf. Wall*, 561 F.3d at 1068-69 (holding that a less extensive analysis is required where no medical evidence conflicted with the ALJ's conclusion that the claimant could perform light work and no physician indicated that the claimant was disabled). Therefore, we conclude that the ALJ's credibility findings are supported by substantial evidence in the record as a whole.

## C. Evidence Submitted to the Appeals Council

Finally, Mr. Patterson argues the evidence he submitted to the Appeals Council after the ALJ issued his decision on January 11, 2013, was relevant to his claims. The Appeals Council received and considered the records and report submitted by the treating psychologist, Mr. Makings, as well as medical records pertaining to Mr. Patterson's back impairment dated November 19, 2012, through March 8, 2013, as discussed above. The Appeals Council did not receive or consider additional medical records dated April 8, 2013, through August 27, 2013. Mr. Patterson argues the additional medical records should have been considered because they showed what his condition had been all along.

12

"[T]he Appeals Council must consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Chambers*, 389 F.3d at 1142 (brackets and internal quotation marks omitted). If the additional evidence does not meet these criteria, "it plays no further role in judicial review of the Commissioner's decision." *Id.* Although the additional medical records related to his ongoing back condition, they did not establish the severity of the condition on or before January 11, 2013, the date of the ALJ's decision. Accordingly, the Appeals Council properly declined to consider these records.

## III. CONCLUSION

The judgment of the district court is affirmed.


Entered for the Court


Jerome A. Holmes
Circuit Judge