FILED
United States Court of Appeals
Tenth Circuit

March 3, 2015

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

WILLIAM WALTERS,

Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant - Appellee.

No. 14-1096
(D.C. No. 1:12-CV-03303-CMA)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before **GORSUCH**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

William Walters appeals the district court's order affirming the

Commissioner's denial of his application for social security disability insurance

benefits.  He also requests leave to proceed on appeal in forma pauperis (IFP).  We

grant the IFP motion and affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Mr. Walters alleged he was disabled and unable to work since October 1, 2006, due to loss of nerve ending, long and short term memory loss, balance issues, and loss of focus. He was insured for disability benefits through December 31, 2008, so he had to establish that he was totally disabled before then. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

An Administrative Law Judge (ALJ) held a hearing and heard testimony from Mr. Walters and a vocational expert (VE). The ALJ found that Mr. Walters suffered from the severe impairments of Charcot-Marie-Tooth (CMT) disease, a neurological disorder; adjustment disorder with depressed mood; anxiety; and alcohol abuse. The ALJ then determined that Mr. Walters could not do his past work as a carpenter, but he retained the residual functional capacity (RFC) to perform a limited range of light work that existed in significant numbers in the national economy. Accordingly, the ALJ determined at step five of the controlling five-step sequential analysis, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step analysis), that Mr. Walters was not disabled under the Social Security Act. The Appeals Council denied review and the district court affirmed.

## II. Legal Standards

We review the agency's decision to ascertain whether it is supported by substantial evidence in the record and to evaluate whether the correct legal standards were applied. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

- 2 -

"Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted). To determine whether substantial evidence supports the agency's decision, we examine the record as a whole, but we do not reweigh the evidence. *Id.* We also do not "substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). In this context, "disability" requires both "an inability to engage in any substantial gainful activity" and "a physical or mental impairment, which provides reason for the inability." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted).

## III. Credibility

Mr. Walters challenges the ALJ's determination that his subjective complaints of his limitations were not entirely credible. It is well-established that "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

The ALJ discussed numerous pieces of evidence relevant to Mr. Walters's credibility, noting that even though he claimed to be totally disabled, he went camping, canoeing, and rock climbing. An ALJ may factor into her credibility

analysis a claimant's inconsistent "report[s of] what he was able and unable to do." *Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007). In addition, although a 2002 EMG showed sensory neuropathy and axonal denervation due to CMT, Mr. Walters did not seek treatment for CMT until March 2004. A claimant's failure to seek medical treatment is a proper factor in assessing a claim of a severe impairment. *See* SSR 96-7p, 1996 WL 374186, *7 (July 2, 1996); *Keyes-Zachary*, 695 F.3d at 1167 (stating that when evaluating credibility, the ALJ should consider, among other items, the claimant's regular contact with a physician and his willingness to try any prescribed treatment).

Mr. Walters objects to the ALJ's implication that he had engaged in drug-seeking behavior by repeatedly requesting refills of his Lorazepam before the refill date when, in fact, he had either lost them or his wife had stolen them. He does not dispute the finding that he requested early refills. It is not clear that the ALJ discounted Mr. Walters's credibility due to drug-seeking behavior, but substantial evidence would support such a finding. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009) (holding "there was sufficient evidence in the record to support the ALJ's determination that [claimant's] credibility about her pain and limitations was compromised by her drug-seeking behavior").

Mr. Walters challenges the ALJ's reliance on inconsistent evidence to discount his credibility. The ALJ noted that his claimed disability onset date of October 1, 2006, undermined his statement that his first unexplained fall did not occur until

more than 18 months later. In addition, during a February 2008 doctor's visit, Mr. Walters stated both that he had recently had his first unexplained fall and that he had no physical limitations. Although Mr. Walters argues that the record is replete with evidence of his balance difficulties, that evidence was from 2010 and 2011, well after his last-insured date of December 31, 2008. As for his September 2004 complaint to a physician that he was having balance problems, this comment was contradicted by Mr. Walters's later statement that he had his first and only fall just before February 1, 2008. Similarly, his testimony that he had experienced overall numbness since 2005 was not supported by medical evidence of reports or testing for numbness. Mr. Walters relies on his complaint of numbness to Dr. Gopal in December 2009, but that did not demonstrate that he experienced numbness dating back to 2005.

Mr. Walters testified that he left his last job in 2003 because he fell off ladders and was hospitalized several times. The ALJ found him not credible because the medical evidence did not mention balance problems or hospital visits in 2003, although Mr. Walters did seek treatment for other problems during that period. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (stating ALJ may consider "the consistency or compatibility of non-medical testimony with objective medical evidence" in assessing credibility). Mr. Walters contends that the medical records for these injuries were referenced in his Veterans' Administration (VA) records. But the VA records on which Mr. Walters relies do not pertain to medical

services requested in 2003.  And contrary to Mr. Walters's claim, the ALJ did not rely on the lack of medical evidence prior to his alleged onset date to find Mr. Walters not disabled.  Rather, this lack of medical evidence, in contrast to Mr. Walters's testimony that he had been hospitalized several times, contributed to the ALJ's adverse credibility determination.  Accordingly, we conclude that the ALJ's credibility findings were closely and affirmatively linked to substantial evidence.

## IV.    Listings of Impairments

Mr. Walters argues that the ALJ erred in concluding at step three that he did not meet or equal Listing 11.14 for peripheral neuropathies.  *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 11.14.  "At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity."  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (internal quotation marks omitted).  Here, the ALJ determined that Mr. Walters did not meet Listing 11.14 (or others) "because no treating or examining physician of record has reported any of the necessary clinical, laboratory or radiographic findings specified [in the pertinent listings]."  Aplt. App. Vol. 1 at 16.  Mr. Walters argues that this explanation is inadequate.

Mr. Walters contends that the 2002 EMG (before his claimed onset date) that revealed peripheral neuropathies, coupled with his subjective complaints of

numbness in his upper and lower extremities, demonstrates that he met the listing.[1]

In contrast, the February 2008 physical examination (after his claimed onset date) showed no pathological neurological signs. Aplt. App., Vol. 1 at 482. Listing 11.14 requires, among other things, "disorganization of motor function . . . in spite of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14. Mr. Walters cites no evidence that he was prescribed treatment for peripheral neuropathies, let alone evidence that any prescribed treatment failed to improve his condition. Thus, evidence to establish the criteria for listing 11.14 is "simply not present in the medical record," so the ALJ did not err in the step-three determination. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005).

## V.     Residual Functional Capacity

Mr. Walters next challenges the ALJ's RFC assessment. RFC is "what the claimant can still do despite his or her limitations." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Mr. Walters contends that the ALJ failed to take into consideration his anxiety and depression. The ALJ specified that "[i]n deference to his mental impairments," he was limited to unskilled work. Aplt. App., Vol. 1 at 19.[2]

---

[1]     He also asserts that his "constellation of impairments" could have met the listing, Aplt. Br. at 27, but he has suggested no additional medical evidence that contributes to this constellation.

[2]     "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985).

"In a social security disability case, the claimant bears the burden to prove [his] disability." *Flaherty*, 515 F.3d at 1071. "[T]he mere presence of [a condition] is not necessarily disabling. Rather, [a condition], alone or in combination with other impairments, must render claimant unable to engage in any substantial gainful employment." *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (citations, brackets, and internal quotation marks omitted).

Mr. Walters relies only on the *diagnosis* of depression and anxiety. The ALJ noted that Mr. Walters did not receive treatment for depression and anxiety, and in September 2009, he stated he was not interested in mental-health treatment and his current medication was working fine. Moreover, Mr. Walters did not testify that depression and anxiety affected his ability to work; rather he testified only that at the date of the hearing—November 14, 2011—his anxiety prevented him from being around crowds. The evidence does not "show that [Mr. Walters] has a mental impairment which prevents him from working," *id.* at 580.

Mr. Walters also alleges error in the ALJ's determination that he could stand and walk for a total of four hours in an eight-hour day. He claims the evidence demonstrated numbness, neuropathy, and balance problems which prevented him from standing and walking that long. But other than the 2002 EMG, the only evidence of these alleged limitations was Mr. Walters's subjective complaints. The ALJ found those complaints not entirely credible, as discussed above. Mr. Walters has cited to no objective evidence between his alleged onset date and his last-insured

date to support this claim, and the ALJ noted this lack of evidence. Accordingly, we decline to reweigh the evidence, and we conclude that substantial evidence supports the ALJ's RFC determination.

Mr. Walters also complains that the ALJ disregarded the VA's determination that he was disabled as of April 2002. "Although another agency's determination of disability is not binding on the Social Security Administration, it is evidence that the ALJ must consider and explain why [she] did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing 20 C.F.R. § 416.904). The ALJ considered the VA's assessment but gave it no weight, explaining that it was based on time periods—and medical records—before and after the relevant time period here. Furthermore, the ALJ said it was unclear whether the VA applied the same definition of "disability" as the Social Security Act and regulations. Indeed, VA disability ratings are based on how an impairment would affect the average person, *see* 38 C.F.R. § 4.1 (stating the "percentage ratings represent . . . the average impairment in earning capacity"), rather than the particular claimant, *see* 20 C.F.R. § 404.1505(a) (defining "disability" as an *individual's* inability to work because of physical or mental impairments). Therefore, the ALJ adequately explained why she did not find the VA's assessment persuasive.

## VI. Hypothetical Questions to VE

Finally, Mr. Walters claims that the hypothetical questions the ALJ posed to the VE did not recite all of his impairments, so the VE's testimony that he could

perform other work was not supported by substantial evidence. Mr. Walters again asserts that the ALJ failed to take into consideration his mental limitations and his more limited ability to stand and walk, arguments we have already rejected.

Mr. Walters also claims that the ALJ failed to take into account his environmental restrictions, contrary to SSR 85-15, which provides, "[w]here the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [vocational specialist]," 1985 WL 56857, at *8. The ALJ's hypothetical question to the VE included a limitation of avoiding "all exposure to fumes, odors, dust and other pulmonary irritants," Aplt. App., Vol. 1 at 69. The jobs the VE identified as appropriate for Mr. Walters included this restriction, in compliance with SSR 85-15. Although Mr. Walters appears to argue that he required additional environmental restrictions, he has identified neither the restrictions nor any evidence to support them.

## VII. Conclusion

Mr. Walters's IFP motion is granted. The judgment of the district court is affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge

- 10 -